UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:06CV-115-R

STONES RIVER ELECTRIC, INC.                                                                PLAINTIFF

v.

CHEVRON ENERGY SOLUTIONS CO., et al.                                            DEFENDANTS

### MEMORANDUM OPINION

This matter is before the Court on Defendants' Motion to Dismiss (Docket #14). Plaintiff filed a response (Docket #15) to which Defendants have replied (Docket #16). This matter is now ripe for adjudication. For the reasons that follow, Defendants' Motion to Dismiss is GRANTED.

### BACKGROUND

On August 30, 2004, Defendant Chevron Energy Solutions (Chevron)[1] and Plaintiff Stones River[2] entered into a general Subcontract Agreement, pursuant to which Chevron and Plaintiff agreed to perform services pursuant to work orders that would be fully incorporated into the Subcontract Agreement.[3] Defendant Fidelity and Deposit Company of Maryland ("Surety")[4] acted

---

[1] Chevron is a Pennsylvania corporation headquartered in California. At all times relevant to the dispute, Chevron operated out of its offices in Overland Park, Kansas.

[2] Stones River is a Tennessee corporation located in Nashville, Tennessee.

[3] The Subcontract Agreement contains a choice of law provision stating that "[t]he Contract Documents shall be governed by the laws of the State of California." Plaintiff argues that Kentucky law should govern as the events and circumstances giving rise to the dispute occurred entirely within Kentucky, and California has no substantial relationship to the parties or the transactions at issue other than the fact that it is the site of Chevron's parent headquarters. This Court will analyze the issues under the law of both jurisdictions.

[4] Surety is a Maryland corporation headquartered in Schaumburg, Illinois.

as a surety. Pursuant to the Subcontract Agreement, Chevron, the general contractor, and Plaintiff agreed that Plaintiff would provide work installing lamps, ballasts, sockets, and fixtures, all as specified in the Subcontract Agreement, in connection with a major lighting upgrade project at Murray State University (MSU).

On September 15, 2005, there was a fire at MSU in a light fixture that Plaintiff had retrofitted located in MSU's Stewart Stadium. Chevron sent Plaintiff a letter of termination on October 21, 2005. Chevron purportedly terminated the Subcontract Agreement for cause, alleging serious work deficiencies and claiming that Chevron would be forced to incur substantial costs associated with the deficiencies. Chevron also stated that it would charge back to Plaintiff all costs and expenses it incurred to cure the alleged deficiencies. Additionally, the letter alleged the existence of actionable deficiencies and conduct pre-dating the termination. The parties disagree as to whether Plaintiff's work was seriously deficient and as to whether Chevron had the right to terminate the Subcontract Agreement.

The Subcontract Agreement contains the following provision:

**ARTICLE 16.  DISPUTE RESOLUTION**

In the event of a dispute, controversy, or claim arising out of or relating to this Agreement, the Parties shall confer and attempt to resolve such matter informally. If such dispute or claim cannot be resolved in this manner, then the dispute or claim shall be referred first to the Parties' executive officers for their review and resolution. If the dispute or claim still cannot be resolved by such officers, then the Parties shall agree to either submit to non-binding mediation or either Party may file a written demand for arbitration with Judicial Arbitration & Mediation Services ("JAMS") and shall send a copy of such demand to the other Party. The arbitration shall be conducted pursuant to the appropriate JAMS Arbitration Rules in effect at the time the arbitration is commenced. For amounts in excess of $250,000, JAMS Comprehensive Arbitration Rules and Procedures shall apply. For lesser disputed amounts, JAMS Streamlined Arbitration Rules and Procedures shall apply. The award rendered by the arbitrator shall be final and binding on the Parties and shall be deemed enforceable in any court having jurisdiction thereof and of the Parties.

> The arbitration shall be heard by one arbitrator, who shall have experience in the general subject matter to which the dispute relates. The arbitration shall take place at the JAMS office geographically closest to the site where the Work or Services has been performed.

Informal attempts to resolve the dispute failed and Plaintiff filed the present action on July 7, 2006. Defendants filed a Motion to Dismiss and simultaneously filed a written Demand for Arbitration with JAMS on September 1, 2006.

## STANDARD

The Defendants have move the Court to dismiss under FED. R. CIV. P. 12(b)(1), which provides for dismissal for lack of subject matter jurisdiction. Where a defendant challenges subject matter jurisdiction under Rule 12(b)(1), the plaintiff bears the burden of establishing jurisdiction. *United States ex rel. McKenzie v. BellSouth Telecomms., Inc.*, 123 F.3d 935, 938 (6th Cir. 1997). The motion to dismiss is properly granted only if it appears that the plaintiff can prove no set of facts which would entitling him to relief. *Id.* "All factual allegations in the complaint are accepted as true and construed in the light most favorable to the plaintiff." *Id.*

## DISCUSSION

Congress enacted the Federal Arbitration Act ("FAA") in 1925 in "response to hostility of American courts to the enforcement of arbitration agreements." *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111 (2001). The FAA "creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32 (1983). This body of law requires that "questions of arbitrability . . . be addressed with a healthy regard for the federal policy favoring arbitration," and "any doubts concerning the scope of arbitrable issues . . . be resolved in favor of arbitration." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). Though there remains "no federal

policy favoring arbitration under a certain set of procedural rules; the federal policy is simply to ensure the enforceability, according to their terms, of private agreements to arbitrate." *Volt Info. Scis., Inc. v. Bd. of Trs.*, 489 U.S. 468, 476 (1989).  Section 2 of the FAA provides that:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

The parties dispute the meaning of the following provision of Article 16: "the Parties shall agree to either submit to non-binding mediation or either Party may file a written demand for arbitration with [JAMS] and shall send a copy of such demand to the other Party."  Plaintiff claims that the use of the word "may" instead of "shall" to modify the arbitration provision indicates that the Subcontract Agreement does not mandate arbitration.  Defendants assert that this provision requires arbitration once either party files a written demand for arbitration with JAMS.

The Court finds that the same analysis will apply with respect to Plaintiff's claims against both Chevron and the Surety.  Surety claims are arbitrated under the same dispute resolution clauses that govern the contract between the principal and the contracting party.  *See Buck Run Baptist Church, Inc. v. Cumberland Sur. Ins. Co.*, 983 S.W.2d 501, 502 (Ky. 1998); *Boys Club of San Fernando Valley, Inc. v. Fid. & Deposit Co.*, 6 Cal. App. 4th 1266, 1272 (Cal. 1992).

The use of the word "shall" in a contract provision indicates that the provision is mandatory. *See* BLACK'S LAW DICTIONARY 1233 (5th ed. 1979).  Webster's dictionary defines "either-or" as "an unavoidable choice or exclusive division between only two alternatives."  WEBSTER'S NINTH

NEW COLLEGIATE DICTIONARY 399 (Merriam-Webster Inc. 1991).  Thus, according to the plain language of the contract, the parties are required to make a choice between two exclusive alternatives; they may (1) agree to submit to non-binding mediation or (2) upon the filing of a written demand by a party, engage in arbitration with JAMS.[5]  *See Cisneros v. Alpine Ridge Group*, 508 U.S. 10, 17 (1993) (analyzing contract according to its plain meaning).  These exclusive alternatives, agreed to by the parties, deprive this Court of subject matter jurisdiction.[6]

## CONCLUSION

For the foregoing reasons, the Defendants' Motion to Dismiss is GRANTED.

An appropriate order shall issue.

---

[5] The Court recognizes that the provision the parties have utilized in their contract is not identical to that suggested in the JAMS Guide when parties to a contract wish to make arbitration mandatory.  However, the provision that the JAMS Guide provides is cited only as an example and is not the exclusive method through which parties may bind themselves to mandatory arbitration.

[6] The Court finds that it would reach the same result under both Kentucky and California law.

5